UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JULIE PHARES,<br>Plaintiff,<br><br>-v-<br><br>SCHINDLER ELEVATOR CORPORATION,<br>Defendant. | No. 1:25-cv-107<br><br>Honorable Paul L. Maloney |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Julie Phares worked for Defendant Schindler Elevator Corporation for about three years. She alleges a coworker, her mentor, subjected her to sexual harassment. After she complained about the harassment, Defendant demoted her and put her under the coworker's supervision. While he did not continue to harass her, Plaintiff contends that her new boss began to retaliate. And when she complained about the retaliation, Defendant terminated her. Plaintiff then filed this lawsuit raising claims under both federal and state law.

Defendant filed a motion for summary judgment. ECF No. 35. The court will grant the motion because the evidence in the record does not support Plaintiff's claims. Viewing the evidence in the light most favorable to Plaintiff, the harassing conduct was not sufficiently severe or pervasive and did not permeate the workplace to create a hostile work environment. While Plaintiff can establish a prima facie case for a retaliation claim under federal law, Defendant has offered legitimate, nondiscriminatory reasons for the adverse employment actions.

I.

Plaintiff alleges seven causes of action in her complaint, three under federal law and four under state law. She alleges Title VII claims for sex discrimination (count 1), a hostile work environment (count 2), and retaliation (count 3). She also raises claims for sex discrimination – hostile work environment (count 4), and retaliation (count 5) under Michigan's Elliott-Larsen Civil Rights Act (ELCRA). In addition, Plaintiff asserts claims for breach of contract (count 6) and for intentional infliction of emotional distress (count 7).

Defendant seeks summary judgment and dismissal of each cause of action. A trial court should grant a motion for summary judgment only in the absence of a genuine dispute of any material fact and when the moving party establishes it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this burden, the moving party must identify those portions of the pleadings, depositions, answers to interrogatories, admissions, any affidavits, and other evidence in the record, which demonstrate the lack of genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). The moving party may also meet its burden by showing the absence of evidence to support an essential element of the nonmoving party's claim. *Holis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014).

When faced with a motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The court must view

the facts and draw all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018) (citing *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In resolving a motion for summary judgment, the court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

## II.

Plaintiff began working for Defendant in March 2021 as a Territory Manager in Defendant's Field Quality and Excellence (FQE) group. ECF No. 35-3 Phares Dep. at 107 PageID.1206. She worked remotely from Michigan. *Id.* Her responsibilities included safety audits, training, and quality initiatives in Michigan, Illinois, and Wisconsin. *Id.* at 134-35 PageID.1233-34. When she started, Plaintiff reported to Jeffrey Johnson, the FQE Operations Manager. ECF No. 35-13 Johnson Dep. at 26 PageID.1740. Johnson supervised ten FQE managers. *Id.* at 18 PageID.1732.

Johnson asked Sean Cain to mentor Plaintiff. ECF No. 35-11 Cain Dep. at 50 PageID.1512; *see* Phares Dep. at 141 PageID.1240. In March 2021, Cain also worked as a FQE Territory Manager. Cain Dep. at 13-14 PageID.1475-76; Phares Dep. at 249 PageID.1348. Cain lived in Ohio. Cain Dep. at 52 PageID.1514. Plaintiff communicated with Cain on a daily basis. Phares Dep. at 250 PageID.1349.

Plaintiff complains about how Cain treated her in connection with her participation in the Women in Leadership Program (WIL).[1] Johnson nominated Plaintiff to participate in the program. Johnson Dep. at 127 PageID.1841. Run by a third party not associated with Defendant, the nine-month program developed leadership skills for female employees. Participants needed to select individuals who would provide an assessment. Phares Dep. at 159 PageID.1258. Plaintiff selected Cain, among others. *Id.* Cain ranked Plaintiff lower than all of her other evaluators. *Id.* at 159-60 PageID.1258-59. Barb Vidal, part of Defendant's Human Resources Department, recalled that Plaintiff reached out following Cain's assessment.[2] ECF No. 35-23 Vidal Aff. PageID.2018. Vidal did not recall that Plaintiff alleged that Cain's assessment was discriminatory. *Id.*

In addition to Vidal, Plaintiff also spoke with Johnson about Cain's assessment. Phares Dep. at 159-60 PageID.1258-59; Johnson Dep. at 130 PageID.1844. Johnson spoke with Cain about the WIL assessment. Phares Dep. at 160-61 PageID.1259-60 and at 163 PageID.1262; Johnson Dep. at 133 PageID.1847. Cain testified that he misunderstood the evaluation system. Cain Dep. at 60-63 PageID.1522-25. Cain gave Johnson the same explanation. Johnson Dep. at 134 PageID.1848. Cain also gave that same explanation to Plaintiff. Phares Dep. at 164 PageID.1263.

---

[1] Plaintiff plead that the WIL program began in November 2021 and the assessment occurred in February 2022. ECF No. 1 Compl. ¶ 101 and ¶ 108. Cain recalled that the assessment occurred more than a year after Plaintiff started working for the company. Cain Dep. at 64-65 PageID.1526-27.

[2] The record contains no evidence to support the conclusion that participation in this program affected Plaintiff's job. The program appeared to be voluntary. Unless Plaintiff chose to share the ratings and feedback, no one employed by Defendant would seek the assessments. ECF No. 35-2 Vidal Dep. at 177 PageID.886. Vidal testified that the WIL performance appraisal raised no concerns about Plaintiff's performance at the company. *Id.* at 211 PageID.920.

Plaintiff alleges that Cain harassed her. The harassment occurred when the two would meet at some location for work purposes. Cain remembered travelling to Madison, Wisconsin and also to Pittsburgh, Pennsylvania. Cain Dep. at 53 PageID.1515. Cain also recalled meeting Plaintiff at various locations for training, including Chicago, Cleveland, and Detroit. *Id.* at 54 PageID.1516. Plaintiff contends that Cain engaged in inappropriate conduct on two of these trips. Cain made inappropriate comments during a trip to Ohio. *See* Phares Dep. at 85 PageID.1184. Plaintiff thought that the trip might have occurred in October 2021. *Id.* at 91 PageID.1190. Cain said that if he wasn't married, he would marry Plaintiff. *Id.* Plaintiff did not interpret the comment as an attempt to make her feel better. *Id.* Several times Cain told Plaintiff she reminded him of an ex-girlfriend. *Id.* at 90 PageID.1189. Cain also instructed Plaintiff not to wear certain shorts around him. *Id.* at 88 PageID.1187. Plaintiff recalled that Cain made the statements over the course of one day. *Id.*

The other comments occurred during a trip to Wisconsin. Plaintiff testified that she was at that location in Wisconsin for about a week. Phares Dep. at 94 PageID.1193. Cain told Plaintiff not to wear dresses around him and that she needed to dress more professionally. *Id.* at 91 PageID.1190. Cain told Plaintiff that he knew she paid a lot for her breasts but she should keep them covered.[3] *Id.* at 92 PageID.1191. Cain told Plaintiff she only had a job because she had a vagina. *Id.* at 83 PageID.1182. Plaintiff recalled that Cain

---

[3] Plaintiff testified she had breast augmentation surgery. Plaintiff Dep. at 95 PageID.1194. One of the implants popped and she developed an infection. *Id.* Plaintiff had to use a drip bag and brought it to work before a second surgery. *Id.* She made Cain aware of her situation. *Id.*

made this comment in a hotel lounge and that Chris Bolin was there.[4] *Id.* at 84 PageID.1183. Plaintiff also recalled Cain saying that women who worked for Defendant got their job or promotions by giving blow jobs. *Id.* at 98 PageID.1197.

Plaintiff identified a few other sexist comments.[5] Cain said that Plaintiff sucked as a manager but got better after her divorce. Phares Dep. at 86 PageID.1185. Cain told Plaintiff she was dumb and stupid. *Id.* at 173 PageID.1272. When Plaintiff cried, Cain told her she was weak. *Id.* The record does not establish where Plaintiff and Cain were or when he made these comments.

Plaintiff acknowledged that, following any of the comments, she did not immediately report the incidents to anyone. Phares Dep. at 97 PageID.1196.

Plaintiff spoke with Vidal about Cain's inappropriate behavior on two occasions during the time Plaintiff worked as a Territory Manager and reported to Johnson. Phares Dep. at 197 PagerID.1296 and at 200 PageID.1299. Plaintiff could not remember the date of the first discussion, but she recalled that Vidal called her to talk about someone else. *Id.* at 194 PageID.1293; *see id.* at 96 PageID.1195. In October 2022, Vidal contacted Plaintiff as part of an investigation about issues raised by a different employee. Vidal Aff. PageID.2019. During their conversation, Plaintiff expressed concerns to Vidal about Cain's behavior. *Id.* Plaintiff recalled that Vidal "made me spill it all out. ..., I told her everything."

---

[4] In his deposition, Cain recalled meeting Plaintiff and Bolin in a hotel lobby in Wisconsin in 2022. Cain Dep. at 78 PageID.1540. Cain denied making any such comment. *Id.* at 79-80 PageID.1541-42.

[5] In Plaintiff's response brief, she argues that Cain would call her a DB (dumb bitch) when introducing her to other employees. ECF No. 45 at 4 PageID.2097. Plaintiff omitted any citation to record for this allegation.

Phares Dep. at 99 PageID.1198. Plaintiff told Vidal that Plaintiff had reported Cain's comments to Johnson, who then spoke with Cain. Vidal Aff. PageID.2019. Plaintiff told Vidal that, after Johnson spoke with Cain, Cain treated Plaintiff with respect. *Id.* Because of the latter representations, Vidal did not pursue an investigation. *Id.*

Plaintiff does not recall when her second conversation with Vidal occurred. Phares Dep. at 196 PageID.1295. Plaintiff told Vidal that the situation had improved. *Id.* Plaintiff could not recall if she told Vidal about any additional harassing or discriminatory comments by Cain. *Id.*

Cain testified that no one told him that Plaintiff had complained about his behavior. Cain Dep. at 74-81 PageID.1536-43. Cain also testified that he was unaware of any HR complaints against him while employed by Defendant. *Id.* at 80 PageID.1542. Cain clarified that he did learn of one complaint against him when he was terminated. *Id.* at 81 PageID.1543.

Plaintiff experienced two job changes while working for Defendant. The first occurred in late 2022. Defendant reorganized the Field Operations group based on geographic and business needs. Vidal Aff. PageID.2107. Defendant moved Plaintiff from her job as Territory Manager to a Product Safety Leader (PSL). Phares Dep. at 139 PageID.1238. Sometime in December 2022, Johnson told Plaintiff that, beginning in January 2023, Plaintiff would report to Cain. *Id.* Plaintiff's job title did not change. Johnson Dep. at 72 PageID.1786; Cain Dep. at 135 PageID.1597. Plaintiff's compensation did not change. Vidal Dep. at 114 PageID.833. And she continued to work from home. ECF No. 35-26 Email 1-3-23 PageID.2029. But her duties changed to that of a PSL. *Id.*

Plaintiff testified that Cain did not make an additional sexist comments after she started reporting to him in January 2023. Phares Dep. at 141-42 PageID.1240-41. Cain did, however, begin bullying her and taking retaliatory actions. *Id.* at 142 PageID.1241.

In late March 2023, Plaintiff again spoke with Vidal about Cain's earlier behavior. Vidal Aff. PageID.2019. Vidal took notes, which are dated March 30, about the conversation. ECF No. 45-9 Vidal Notes PageID.3201-02. Plaintiff identified some of the comments Cain made to Plaintiff prior to the reassignment. *Id.*; Vidal Aff. PageID.2019. Plaintiff discussed other inappropriate conduct by Cain, but none of it was directed at Plaintiff. Vidal Notes PageID.3201-02. Plaintiff sent Vidal an email on March 31 about their conversation. ECF No. 45-10 PageID.3203. Plaintiff wrote, at the outset, that she "would not like to have this go any further to the outside, but wanted someone to be aware of the behavior to protect others." *Id.* She ends the email in similar fashion: "I do not want this getting back out to where it was me that reported but for action to take place in a manner that it will not spiral back to Sean please." *Id.* Vidal could not verify Plaintiff's allegations about how Cain treated other employees. Vidal Dep. at 250 PageID.959; at 255 PageID.964; Vidal Aff. PageID.2019-20.

Plaintiff identifies several examples of adverse treatment of her by Cain after she began reporting to him. For her annual review in 2023, Cain gave Plaintiff a "B." Cain Dep. at 71 PageID.1533. Previously, Plaintiff had been given a "B+." *See id.* In April 2024, Plaintiff sent an email to Cain, Johnson, and Vidal about problems with her time off and comp time. ECF No. 45-11. Plaintiff insisted that she had six weeks of vacation time, which Cain had not honored. *Id.* PageID.3207. Plaintiff disagreed with Cain about comp time for

travel to and from work sites. *Id.* Cain and Plaintiff exchanged emails. Cain forwarded the final exchange to Vidal and Johnson stating that he is "done with this insubordination please process termination or I will escalate." *Id.* PageID.3204. About the same time, on April 18 around 7:00 p.m., Cain sent an email to two individuals employed by Defendant—Scott Johnson and Paul Bloom—asking that Plaintiff be terminated. ECF No. 45-13 PageID.3212.

Soon thereafter, Vidal contacted Plaintiff regarding statements Plaintiff had made about Cain to other employees. Phares Dep. at 164-65 PageID.1263-64. Someone reported that Plaintiff had called Cain a piece of shit. *Id.* at 165 PageID.1264; Vidal Dep. at 267 PageID.976. Vidal interviewed several individuals who corroborated that Plaintiff made the statement. Vidal Dep. at 268 PageID.977. Plaintiff denied making the statement. Phares Dep. at 167 PageID.1266.

Starting on April 19, 2024, Plaintiff began reporting to Chris Bolin rather than to Cain. Vidal Aff. PageID.2018.

On April 30, 2024, Vidal sent Plaintiff a warning letter. Vidal Dep. at 269 PageID.978; ECF No. 35-34 Warning Letter PageID.2045. The letter stated that disparaging comments about any colleague was unprofessional and needed to stop. Warning Letter PageID.2045. The Vidal warned Plaintiff that further comments could lead to disciplinary action up to and including termination. *Id.*

Defendant ultimately terminated Plaintiff on June 26, 2024. Vidal states that Defendant conducted a reduction-in-force (RIF) that included employment cuts in the FQE group. Vidal Aff. PageID.2021. Defendant experienced reduced business in Plaintiff's territories. *Id.* Vidal encouraged Plaintiff to apply for open positions within the company.

*Id.* Vidal states that Defendant also terminated a male Technical Compliance Officer in the FQE group at the same time. *Id.* Defendant terminated other employees four months later as part of an additional RIF. *Id.* PageID.2022.

III.

Defendant seeks summary judgment for Plaintiff's sex discrimination and hostile work environment claims under federal and state law, counts 1, 2, and 4.[6]

Title VII and Michigan's ELCRA prohibit employment discrimination on the basis of sex. 42 U.S.C. § 2000e-2(a); Mich. Comp. Laws § 37.2202(1)(a). Sexual harassment in the workplace constitutes a violation of the prohibition against discrimination on the basis of sex. *Hamm v. Pullman SST, Inc.*, 167 F.4th 382, 388 (6th Cir. 2026); Mich. Comp. Laws § 37.2103(i). For a sexual harassment claim, sometimes referred to as a hostile work environment, a plaintiff establishes a prima facie case under Title VII by showing five elements: (1) she belonged to a protected class; (2) she suffered unwelcome sexual harassment; (3) the harassment occurred because of her sex; (4) the harassment created a hostile work environment; and (5) the harassment can be imputed to the employer. *See Doe v. City of Detroit*, 3 F.4th 294, 300 (6th Cir. 2021). For a sexual harassment claim under Michigan's ELCRA, a plaintiff must also establish five elements: (1) she belonged to a protected group; (2) she suffered communication or conduct based on her protected status;

---

[6] Plaintiff titled count 1 as "Sexual Discrimination/Harassment in Violation of Title VII." ECF No. 1 Compl. PageID.35. Defendant addresses count 1 as a hostile work environment claim. Defendant also addresses count 1 separately as a disparate treatment discrimination claim. ECF No. 35 at 20-21 PageID.656-57. Plaintiff does not respond to the portion of Defendant's motion seeking summary judgment on count 1 as a disparate treatment discrimination claim. Plaintiff has abandoned any disparate treatment discrimination claim.

(3) she did not welcome the communication or conduct; (4) the unwelcome communication or conduct created an offensive work environment; and (5) respondeat superior. *Major v. Vill. of Newberry*, 892 N.W.2d 402, 417-18 (Mich. Ct. App. 2016).

Michigan modelled the ELCRA after Title VII. *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 27 n.20 (Mich. 1994). Michigan courts often rely on federal court opinions interpreting Title VII as persuasive authority for issues arising under the ELCRA. *Id.*; *see Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468 (6th Cir. 2012).

Defendant argues Plaintiff cannot establish two of the five elements. Defendant contends Plaintiff cannot establish that Cain's comments created a hostile work environment. Defendant also argues that Plaintiff cannot establish any basis for employer liability.

A. Severe or Pervasive

Both Title VII and the ELCRA require a plaintiff to show that the sexual harassment created a hostile work environment. Our Supreme Court explained that a hostile work environment is one "so pervaded by discrimination that the terms and conditions of employment were altered. *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). "The conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and to the actual victim." *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 377 (6th Cir. 2026) (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)).

> Rather than considering each event complained of in isolation, we must consider the totality of the circumstances in determining whether the harassment was sufficiently severe and pervasive. Specifically, we must consider the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and

> whether it unreasonably interfered with an employee's performance. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of unemployment.

*Randolph,* 453 F.3d at 733 (citation modified); *see Scotland v. DTE Energy Corp. Servs., LLC,* No. 369512, 2025 WL 3768113, at *7 (Mich. Ct. App. Dec. 30, 2025) (per curiam).

Viewing the totality of the circumstances in the light most favorable to Plaintiff, Cain's comments do not rise to the level of severe or pervasive. Defendant points to the limited number of comments and the duration of Plaintiff's tenure as Territory Manager, seven or so comments over a year and nine months. Although Cain and Plaintiff did not work at the same location, Plaintiff testified that they spoke almost every day. Cain made the comments to Plaintiff on two occasions when they happened to be at the same location. The record does include evidence that Cain and Plaintiff met at work-related events on multiple occasions and at multiple locations. The Sixth Circuit has found that a few, infrequent, sexualized comments do not create a severe or pervasive hostile work environment. *See, e.g., Clark v. United Postal Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (involving three incidents over a two and a half year period which included vulgar jokes, twice placing a vibrating pager on the plaintiff's thigh and once pulling at the plaintiff's overalls after learning about what underwear the plaintiff wore); *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 790 (6th Cir. 2000) (finding that the plaintiff was not subjected to a hostile work environment based on allegations of (1) several dirty jokes being told in the plaintiff's presence, (2) a verbal sexual advance related to the plaintiff's evaluation, (3) a one-time reference to the plaintiff as "Hot Lips" and (4) isolated comments about the plaintiff's state of dress). The Sixth Circuit

has found comparable situations, five instances of sex-based harassment over a fifteen-month period, insufficient to establish pervasiveness. *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568 (6th Cir. 2021) (collecting cases). The Sixth Circuit has also found that similar situations do not establish severity. *Id.* at 569.

B. Employer Liability

For sexual harassment claims, federal law and Michigan law diverge slightly on employer liability. Title VII applies different standards for evaluating employer liability depending on the harasser's work relationship with the plaintiff. *See Doe*, 3 F.4th at 301 (6th Cir. 2021); *Clark*, 400 F.3d at 348. When an employee endures harassment from a coworker, the employer can be held liable if it knew or should have known about the harassment and failed to implement prompt and appropriate corrective action. *Doe*, 3 F.4th at 301. But when a supervisor harasses the plaintiff, the employer can be held vicariously liable. *Id.* The ELCRA does not make the same distinction. *See Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915-16 (Mich. 2000).

Defendant implicitly argues that Cain held a position as Plaintiff's coworker, not a supervisor. In the fact portion of its brief, Defendant describes Cain and Plaintiff as peers. ECF No. 35 at 4 PageID.640. Defendant acknowledges the different legal standards for a supervisor and a coworker and then addresses the state and federal harassment claims as one based on coworker harassment. Plaintiff approaches the claim in the same manner. At least

for the harassment claims, Plaintiff does not argue that Defendant can be vicariously liable for Cain's conduct as Plaintiff's supervisor.[7]

Under Title VII, when one employee harasses another, the employer can be held liable "only 'if it knew or should have known of the charged sexual harassment and failed to take prompt and appropriate corrective action.'" *Doe*, 3 F.4th at 301 (quoting *Clark*, 400 F.3d at 348). To avoid liability, an employer's response must be reasonably calculated to end the harassment. *Id.* (citation modified). "'The appropriate corrective response will vary according to the severity and persistence of the alleged harassment.'" *Id.* (quoting *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 633 (6th Cir. 2010)). A plaintiff-employee might also establish employer liability by showing that the employer acted negligently by failing to prevent the abuse. *Hamm*, 167 F.4th at 389. "The plaintiff must show that the employer's response to the plaintiff's complaints manifested indifference or unreasonableness in light of the facts the employer knew or should have known." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (citation modified); *see Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 747-48 (6th Cir. 2008) (explaining that the "indifference or unreasonableness" test, while stated as a conjunctive, is "a unitary standard").

For coworker harassment, Michigan law largely uses the same standard. Because Michigan law defines "employer" to include agents, an employer can be held liable for sexual harassment by a coworker in some situations. *See Chambers*, 614 N.W.2d at 915. For

---

[7] The record contains no evidence to support the conclusion that Cain exercised any supervisory authority over Plaintiff prior to the first reorganization. The record does not show that Cain could hire, fire or discipline Plaintiff. The record contains no evidence that Cain could assign Plaintiff any work or set her hours.

sexual harassment claims under the ELCRA, a plaintiff "must show some *fault* on the part of the employer," meaning the employer must have "failed to take prompt and remedial action upon notice of the creation of a hostile work environment." *Id.* at 916. The "relevant inquiry concerning the adequacy of the employer's remedial action is whether the action is reasonably served to prevent future harassment of the plaintiff." *Id.* at 919.

The court finds a lack of a genuine issue of material fact on the employer liability prong of Plaintiff's sexual harassment claims.

First, Plaintiff has not established that Defendant knew or should have known about Cain's conduct prior to Plaintiff making complaints about it. In her response, Plaintiff argues that Defendant had notice in July 2022 about Cain's abusive behavior toward Plaintiff. A former employee, Shannon Drezek, resigned and then sent the email to Vidal. ECF No. 45-7. Most of the mail relates to Drezek's own experiences and her own complaints. Concerning her own experiences, Drezek does not mention Cain by name or accuse him of sexual harassment. In one paragraph, Drezek accused Cain of talking over Plaintiff during phone calls and internet meetings and also speaking poorly to Plaintiff. ECF No. 45-7 PageID.3196. She described Cain's behavior as having "blatant undertones of misogyny." *Id.* The email did not put Defendant on notice or otherwise inform Defendant about the sort of sexual harassment that Plaintiff alleges. The email does not establish that Defendant knew or should have known that Cain made or would make sexualized comments to a coworker. Drezek testified that in September 2022, she had an internet meeting with Vidal and another person to follow up on the email. ECF No. 45-6 Drezek Dep. at 72

PageID.3107. Other than the allegation in the email, Drezek testified that she was unaware of anyone else having issue with Cain while employed by Defendant. *Id.* at 85 PageID.3120.

The record establishes that Plaintiff did not suffer or endure any sexual harassment after she reported Cain's comments to Vidal in October 2022. When Plaintiff first told Vidal about Cain's sexualized statements, Plaintiff also told Vidal that the harassment had already ended. Vidal provided an explanation for not investigating Plaintiff's allegations following the March 2022 conversation: She considered the matter resolved. Vidal Aff. PageID.2019. According to Vidal, Plaintiff told her (Vidal) that she (Plaintiff) raised her concerns about Cain's conduct with Johnson. *Id.* Johnson then spoke with Cain, after which Cain treated Plaintiff with respect. *Id.* Based on Plaintiff's representations, Vidal's decision not to investigate Cain's conduct in October 2022 did not manifest indifference or unreasonableness. Plaintiff herself testified that after she began reporting to Cain, he did not make any sexual comments.

In her response, Plaintiff attempts to hold Defendant liable for conducting a flawed and wholly inadequate investigation. But Vidal did not conduct any investigation after her October 2022 conversation with Plaintiff. And she made that decision because Plaintiff indicated that Cain ceased the harassing conduct after a conversation with their supervisor, Jeffrey Johnson.

Plaintiff relies on Vidal's testimony about other investigations unrelated to the October 2022 conversation. Vidal investigated Plaintiff's allegations about Cain's sexualized comments after a conversation between Plaintiff and Vidal in March 2023. In the March 2023 conversation and email, Plaintiff did not allege that Cain had made sexualized

comments after she began reporting to him; Plaintiff complained about the same sexualized comments that were the subject of her October 2022 conversation with Vidal. Vidal and another employee looked into Plaintiff's allegations and contacted the individuals Plaintiff identified as witnesses. Vidal Aff. PageID.2020. None of them could corroborate what Plaintiff told Vidal about Cain. *Id.* About six weeks later, on June 16, Plaintiff sent Vidal another email with an entirely different tone. After asking a question about the 401k plan, Plaintiff stated that she was "enjoying my new role. It's so rewarding working with the mechanics during SAIS. I love it the last couple of weeks now I'm in Michigan." ECF No. 35-30 PageID.2037. Regardless of whether Vidal could have conducted a more thorough investigation, her efforts were reasonable under the circumstances. Plaintiff has not shown that Defendant's actions were not reasonably calculated to end the harassment. Plaintiff was not reporting any on-going harassment.

IV.

Defendant seeks summary judgment on Plaintiff's federal and state causes of action for retaliation, counts 3 and 5. When a plaintiff relies on circumstantial evidence for a retaliation claim, as occurs here, courts use the familiar *McDonnell-Douglas* burden shifting scheme. *Jackson v. Genesee Road Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021). If the plaintiff meets her burden of showing a prima facie case, the defendant must demonstrate some legitimate, non-discriminatory reason for the employment decision. *Id.* If the defendant produces a legitimate reason, the plaintiff bears the burden of showing that the proffered reason was a mere pretext for discrimination. *Id.*

A. Prima Facie Case

Title VII and the ELCRA both prohibit retaliation against an employee who engaged in protected conduct. For both her federal and state claim, Plaintiff must establish four elements for a prima facie case: (1) she engaged in a protected activity; (2) the defendant was aware of the protected activity; (3) she suffered a materially adverse action; and (4) a causal connection between the protected activity and the adverse action. *Jackson*, 999 F.3d at 343-44.

Defendant challenges the third and fourth elements. For the purpose of this motion, Defendant does not dispute that Plaintiff's October 2022 conversation with Vidal constitutes protected activity. ECF No. 35 at 16 PageID.652. Plaintiff argues, and the court agrees, that her March 2023 email also constituted protected activity. ECF No. 45 at 23 PageID.2116. Defendant does not dispute that it was aware of both complaints. As noted below, the court finds at least one other instance of protected conduct—Plaintiff's email in late April 2024.

1. Adverse Employment Action

Plaintiff identifies two adverse employment actions.[8] First, at the end of 2022, Defendant transitioned her from Territory Manager to PSL, a position that included less responsibility. Second, Defendant terminated Plaintiff in June 2024.

[8] Plaintiff also argues that Cain's conduct, when he began supervising Plaintiff, constituted adverse employment actions. Specifically, Plaintiff points to Cain's restrictions on her use of vacation time, Cain's performance review in 2023, and Cain's demand that Plaintiff be terminated. Even if these could be considered adverse employment actions, Plaintiff cannot connect these adverse actions to her protected conduct. As Plaintiff points out in her response brief, ECF No. 45 at 6 PageID.2099 and at 18 PageID.2111, no one employed by Defendant ever told Cain that Plaintiff had made complaints about him. Because Cain had no knowledge of Plaintiff's protected conduct, Plaintiff cannot establish the causal element of a prima facie case for Cain's actions.

For her prima facie case, Plaintiff has established at least an issue of fact that her move from Territory Manager to PSL amounted to an adverse employment action. Examples of materially adverse actions include termination, a reduction in salary, "a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities." *Wasek*, 682 F.3d at 470 (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000)). A reassignment without a reduction in salary or benefits or changes in work hours may still constitute an adverse employment action if the new position has a less distinguished title, significantly diminished responsibilities or other characteristics that might be particular to that situation. *Harper v. City of Cleveland*, 781 F. App'x 389, 394 (6th Cir. 2019). Defendant relies only on the fact that Plaintiff enjoyed the same salary and she continued to be able to work from home. The record contains evidence that the shift to PSL would ordinarily be considered a demotion and would have a reduced salary because of diminished responsibilities. Vidal Dep. at 124 PageID.833 and at 224 PageID.933; *see* Cain Dep. at 116 PageID.1578.

For her prima facie case, Plaintiff has also established that her termination constitutes an adverse employment action. Defendant does not meaningfully dispute that a termination is an adverse employment action.

Instead, Defendant argues that in the context of a reduction in force (RIF), a plaintiff bears a heightened burden. This principle of law emerged in age discrimination cases. *See Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1464-65 (6th Cir. 1990). In the context of a RIF, a plaintiff alleging an age discrimination claim needs to connect the adverse employment action to his or her age, which would establish that the discharge occurred for an impermissible

reason. *Id.*; *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998). Without that heightened burden, "every person age 40-and-over [would] establish a prima facie case of age discrimination if he or she were discharged as part of a work force reduction." *Barnes*, 896 F.2d at 1465. Therefore, in age discrimination cases involving a RIF, the threshold question is whether the defendant terminated the plaintiff in the context of a reduction in the workforce. *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009). The defendant bears an evidentiary burden of proving that a RIF occurred. *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 539 (6th Cir. 2014) (holding that the plaintiff, in response to the defendant's motion for summary judgment, "has presented sufficient evidence to create a genuine dispute regarding whether his position was truly eliminated; therefore he does not need to meet the heightened standard to prove his prima facie case.").

The concern created by a RIF in age discrimination cases does not appear in Title VII retaliation claims. A plaintiff must already prove, as part of a prima facie case, a causal relationship between the protected conduct and the termination. In the court's view, for retaliation claims not arising in the context of age discrimination, a RIF as a legitimate, non-discriminatory explanation for the termination can be raised by the defendant at the second stage in the *McDonnell Douglas* burden shifting scheme. *See, e.g., Leavy v. FedEx Corp.*, No. 2:19cv2705, 2021 WL 3722339, at *6 (W.D. Tenn. Aug. 23, 2021) (involving a retaliation claim under the FMLA and considering the plaintiff's termination as part of a RIF as a legitimate, nondiscriminatory explanation); *Love v. GUBMK Constructors*, No. 3:05cv399, 2006 WL 3327607, at *6 (E.D. Tenn. Nov. 15, 2006) (involving a Title VII race discrimination and retaliation claim and considering a RIF as a legitimate, nondiscriminatory

explanation for the decision to terminate the plaintiff). The court is unaware of any binding authority explaining why a court must determine whether a RIF occurred as a threshold matter in the context of a Title VII retaliation claim. Defendant does not suffer any prejudice by considering a RIF at the second stage of the *McDonnell Douglas* scheme; a plaintiff must still establish a causal connection between the protected conduct and the adverse employment action to meet her prima facie burden.

Defendant argues that Plaintiff cannot establish the causation element in a prima facie case because both of the allegedly adverse employment actions were dictated by Defendant's business needs. This would be an appropriate consideration if the court imposed the heightened burden necessitated by a RIF. Outside of the RIF context, Defendant's position conflates its burden of production with Plaintiff's burden at the prima facie stage. *See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005) ("[W]e are mindful that prior Sixth Circuit case law warns against conflating the first (*prima facie* case) and the second (articulation of a legitimate non-discriminatory reason) steps in the *McDonnell-Douglas* analysis."); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 664 (6th Cir. 2000) (collecting cases).

2. Causation

Defendant argues that Plaintiff cannot establish the causation element as part of her prima facie case. Retaliation claims brought under Title VII and the ELCRA require the plaintiff to show "but for" causation. *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) (quoting *Univ. of Texas Southwest Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)); *Rouch World, LLC v. Dep't of Civil Rights*, 987 N.W.2d 501, 512 (Mich. 2022). Under

federal law, close temporal proximity between the protected conduct and the adverse employment action can be circumstantial evidence of a causal connection between the protected conduct and the adverse employment action. *Jackson*, 999 F.3d at 349 (citing *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 664-65 (6th Cir. 2021)). Michigan law, however, requires "something more." *West v. Gen. Motors Corp.*, 665 N.W.2d 468, 473 (Mich. 2003) ("Something more than a temporal connection between protected conduct and an adverse employment action is required to show causation where discrimination-based retaliation is claimed."); *see, e.g., Debano-Griffin v. Lake Cnty.*, 828 N.W.2d 167, 171 (Mich. 2013) ("We hold that plaintiff presented evidence that showed more than a temporal relationship between the protected activity and defendants' adverse employment action.") (citing *Gen. Motors Corp.*); *Esordi v. Twp. of Macomb*, —N.W.3d—, 2025 WL 2495908, at *9 (Mich. Ct. App. 2025) ("The mere fact that the termination occurred after plaintiff distributed his memorandum is insufficient to establish causation between plaintiff's reporting and his termination.") (citing *Gen. Motors Corp.*).

Plaintiff has established a causal connection for the purpose of a prima facie case under federal law. First, Plaintiff complained about Cain's conduct in October 2022 and about two months later Defendant moved Plaintiff from Territory Manager to PSL. Second, Plaintiff sent an email in April 2024 to Cain, Johnson, and Vidal complaining about vacation and comp time. Defendant terminated plaintiff about two months later. The temporal proximity between Plaintiff's complaints and the adverse employment action occurred within a few months of each other. Plaintiff cannot, however, rely on her 2022 and 2023 complaints for a causal connection to her termination in 2024. *See Henderson v. Chrysler Group,*

*LLC*¸ 610 F. App'x 488, 495 (finding a six to seven month gap between any protected activity and the adverse action not close enough in time to sustain an inference of causation); *Hafford v. Seinder*, 183 F.3d 506, 515 (6th Cir. 1999) (finding that disciplinary actions taken two to five months after the plaintiff filed charges insufficient to establish causation); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (finding that a gap of four months between the protected conduct and the discharge insufficient to support an inference of retaliation).

For her state law claims, Plaintiff has not shown the "something more" required for her ELCRA claim. In her response, Plaintiff points to her problems with Cain after she began reporting to him. She points to disputes with Cain about scheduling, comp or flex time, and also vacation time. But these new problems could not be related to or caused by Plaintiff's protected conduct. Cain had no knowledge about Plaintiff's protected conduct; he was never told about Plaintiff's earlier complaints.

B. Legitimate Non-discriminatory Reason

Defendant contends that the company experienced several restructurings and reorganizations during Plaintiff's employment. Defendant argues that the restructurings were business decisions and resulted in the two changes to Plaintiff's positions. Plaintiff acknowledged at her deposition that the change from Territory Manager to PSL at the end of 2022 was the result of restructuring. Phares Dep. at 139 PageID.1238 and at 182 PageID.1281. Vidal states that in 2022, the FQE division returned to an earlier organizational structure and, as a result, Defendant eliminated Plaintiff's position as Territory Leader. Vidal Aff. PageID.2017. Cain testified that Defendant eliminated Plaintiff's territory

and consolidated her territory with his. Cain Dep. at 58 PageID.1520. Cain also testified that at least two other Territory Managers lost their positions and one was offered a position as a PSL. Cain Dep. at 116 PageID.1578. Plaintiff does not challenge Defendant's explanation concerning the restructuring at the end of 2022.

Defendant contends it terminated Plaintiff in 2024 as part of a larger reorganization and reduction in force. Defendant's entire workforce faced a reduction. Vidal Dep. at 297 PageID.1006; Vidal Aff. PageID.2021. Because business was down in Plaintiff's territories, Defendant identified her position for elimination. Vidal Dep. at 297 PageID.1006; Vidal Aff. PageID.2021. Cain recalled that Plaintiff's position was eliminated as part of a larger reduction in force and about 80 people were released from the company about the same time. Cain Dep. at 117 PageID.1579 and at 120 PageID.1582. Bolin was also told that Plaintiff's position was eliminated a part of a company-wide downsizing. Bolin Dep. at 41 PageID.1673 and at 45 PageID.1677. Bolin recalled that several other employees in the FQE division also lost jobs. *Id.* at 43 PageID.1675. And Bolin testified that no one had been hired to replace Plaintiff. *Id.* at 44 PageID.1676.

This testimony meets Defendant's burden at the second stage of the *McDonnell Douglas* framework. Defendant has produced a legitimate, nondiscriminatory reason for Plaintiff's termination.

C. Pretext

Because Defendant has provided an explanation for Plaintiff's termination, Plaintiff bears an evidentiary burden to show that Defendant's explanation is a pretext for discrimination. Ordinarily, a plaintiff meets this burden one of three ways: (1) showing the

proffered reason has no basis in fact; (2) showing the proffered reason did not actually motivate the defendant's action; or (3) showing that the proffered reason was insufficient to motivate the defendant's actions. *Harris v. Metro. Gov't of Nashville and Davidson Cntys.*, 594 F.3d 476, 486 (6th Cir. 2010).

Plaintiff relies on Johnson's testimony to question whether a restructuring or RIF occurred in 2024. Plaintiff argues Johnson's testimony suggests that Defendant terminated Plaintiff based on a HR incident.

Plaintiff's evidence does not create a dispute of fact for a jury to decide. The record does not support Plaintiff's description of Johnson's testimony. Johnson did not testify that he was unaware of any restructuring that led to Plaintiff's termination. When asked whether a restructuring or downsizing affected the FQE group in 2024, Johnson provided the following answer: "I don't remember, but I've been here a long time and it seems like every year we have restructuring that includes downsizing and recreating new roles. I don't remember exactly what happened that year." Johnson Dep. at 232 PageID.1946. Johnson could not recall if Plaintiff was terminated or left voluntarily. *Id.* at 222 PageID.1936. Johnson also testified that downsizing or restructuring decisions are usually business motivated and that he would not be involved in making those decisions: "I am never involved in downsizing activity or RIFs or anything like that." *Id.* at 232 PageID.1946. He would, however, be made aware of downsizing decisions that affect his department, even if he did make the final decision. *Id.* at 233 PageID.1947.

Nor did Johnson testify that Defendant terminated Plaintiff because of an HR incident. He knew that those two events occurred relatively close in time. He did not testify

that the two events were related. He recalled that "there was some sort of HR investigation. I don't know what incident caused this, nor do I want to know, quite honestly. It doesn't impact me in the future. I just don't want to know." *Id.* at 228 PageID.1642. He further explained that "there was an HR investigation, and she no longer works here. I don't know if there was an agreed separation agreement, or if she was terminated." *Id.* at 230 PageID.1944. When asked if it was his understanding that Plaintiff "was terminated as the result of, or arising out of that investigation?" Johnson responded "No. I don't know why nor how she was no longer with the company." *Id.* at 230 PageID.1944. Counsel pressed the issue: "So it is the outcome of what you understand to be an HR action, is that what your testimony is?" *Id.* at 231 PageID.1645. Johnson again denied making that connection: "I really don't know that." *Id.*

Equally problematic for Plaintiff, the HR investigation Johnson referred to was not the HR investigation initiated by Plaintiff about Cain's conduct. Johnson referred to the HR investigation about Plaintiff's comments about Cain. Counsel asked Johnson "[w]hich HR investigation are you referring to?" Johnson Dep. at 230 PageID.1944. Johnson replied "[t]he one that - - the letter you just showed me where HR was involved in some sort of conversations back and forth." *Id.* The letter he referred to was discussed a few minutes earlier in his deposition, the April 30, 2024, letter sent to Plaintiff. *Id.* at 206 PageID.1920. Vidal warned Plaintiff about Plaintiff's inappropriate verbal conduct. ECF No. 35-34 PageID.2045. To the extent a trier of fact might draw an inference from Johnson's testimony, the inference would be that Defendant terminated Plaintiff for using inappropriate language about Cain.

Plaintiff also argues that the downsizing did not actually motivate the decision to terminate her. Plaintiff points to Cain's demands that Plaintiff be fired for insubordination. Cain asked that Plaintiff be terminated due to insubordination and because she had been making disparaging comments about Cain and the company. ECF No. 45-13 PageID.3212. Defendant took action to address Cain's concerns after Cain sent his email on April 18. Defendant transferred Plaintiff so that she no longer reported to Cain. Plaintiff reported to Bolin when she was terminated, not Cain. Defendant issued a warning letter to Plaintiff about her unprofessional language. And, as discussed above, Cain was unaware that Plaintiff had made complaints about his harassing conduct. Plaintiff points to the sequence of events as evidence from which the jury might find pretext. While the timing of events might be sufficient to establish the causation element for a federal retaliation claim, temporal proximity by itself cannot be used to establish pretext at the third step of the *McDonnell Douglas* framework. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001); *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 410 (6th Cir. 2014).

Plaintiff also argues that her performance reviews and positive feedback provide a basis for the jury to question whether the restructuring could motivate Plaintiff's termination. Plaintiff's argument here does not address the nuance of Defendant's explanation for Plaintiff's termination. Defendant identified Plaintiff for termination because business in her geographic region was down. In addition, Defendant sought to retain Plaintiff. On June 6, 2024, Vidal sent Plaintiff an email asking about her ability to relocate if a position were to open up in Washington D.C. ECF No. 35-35 PageID.2047. Plaintiff responded that

"[r]elocation is not feasible." *Id.*; Phares Dep. at 225-26 PageID.1324-25; Vidal Dep. at 317 PageID.1026.

The court finds Plaintiff's evidence does not create a dispute of fact whether Defendant's explanation for terminating Plaintiff was mere pretext.

V.

The court finally turns to Plaintiff's state law claims not related to the federal or state employment statutes.

A.

Defendant argues that the court should dismiss Plaintiff's breach of contract claim, count 6. Defendant points to the Employee Handbook, which states that neither the Handbook, nor the company's policies, guidelines or practices create a contract. ECF No. 35-1 Handbook PageID.664. The same page also states that "employment with the company is at-will." *Id.*

Plaintiff does not address this portion of the motion for summary judgment in her response. By failing to oppose the argument, Plaintiff has abandoned her claim for breach of contract. *See Alexander v. Carter*, 733 F. App'x 256, 261 (6th Cir. 2018) ("When a plaintiff fails to address a claim in response to a motion for summary judgment, the claim is deemed waived.") (citation modified); *see, e.g., Notredan, LLC v. Old Republic Exchange Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) ("Notredan's response to the motion to dismiss did not address this argument. This failure amounts to a forfeiture of the fiduciary-duty claim."). The court will dismiss the breach of contract claim.

B.

Defendant argues that the court should dismiss Plaintiff's claim for intentional infliction of emotional distress, count 7. Defendant argues that the record does not contain sufficient evidence to support the elements of the claim.

To prove a claim for intentional infliction of emotional distress under Michigan law, a plaintiff must establish (1) that the defendant engaged in extreme and outrageous conduct, (2) the defendant acted with intent or recklessness, (3) causation, and (4) severe emotional distress. *Swain v. Morse*, 957 N.W.2d 396, 411 (Mich. Ct. App. 2020). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quoting *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003)). Michigan courts have offered a test for determining when acts amount to extreme and outrageous conduct: when informed of the facts, an average member of the community would likely exclaim "Outrageous."[9] *Id.* (quoting *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 909 (Mich. 1985)). Michigan courts have provided some additional guidance for what does not constitute extreme and outrageous conduct; it does not include "mere insults, indignities, threats, annoyances, petty

[9] In 2015, Justice Markman dissented from a decision denying leave to appeal in *Melson ex rel. Melson v. Botas*, 863 N.W.2d 674 (Mich. 2015). Justice Markman expressed "the present need for this Court to clearly and precisely address this tort" and to "carefully define its scope and limits." *Id.* at 675. Quoting a law review, he noted that, unlike other torts, the current test for this tort provides no definition of the prohibited conduct. *Id.* at 676 (citation omitted). The term "outrageous conduct" provides no clear guidance to those seeking to avoid committing the tort or to the courts charged with analyzing the conduct after the fact. *Id.* (citation omitted).

oppressions, or other trivialities." *Swain*, 957 N.W.2d at 411 (quoting *Doe v. Mills*, 536 N.W.2d 824, 833 (Mich. Ct. App. 1995)).

Federal and state courts in Michigan, and the Sixth Circuit Court of Appeals, have considered intentional infliction of emotional distress (IIED) claims in the context of a sexual harassment situation. In *Trudeau v. Fisher Body*, 423 N.W.2d 592, 593 (Mich. Ct. App. 1988), the plaintiff claimed her supervisor made a single inappropriate sexually suggestive remark to her. Plaintiff was subsequently terminated and she filed a complaint with a single claim for IIED. The Michigan Court of Appeals found the statement "repulsive." *Id.* at 594. With little commentary or discussion, the court found that "in an adult workplace," the statement did not rise to the level of extreme and outrageous conduct. *Id.*

More than ten years later, the Sixth Circuit relied on *Trudeau* to reach the same conclusion. In *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 771 (6th Cir. 1996), the plaintiff and alleged harasser worked for the same company but in different locations. Over the course of a year, the two had multiple work-related interactions and several interactions outside of work. *Id.* at 771-74. The male employee made comments to the plaintiff that, over time, made her more and more uncomfortable. *Id.* Citing *Trudeau*, the Sixth Circuit held that the male employee's "conduct was not sufficiently outrageous as a matter of law." *Id.* at 777. Again, the court offered little commentary or discussion.

This court considered more egregious conduct in *Selph v. Gottlieb's Financial Services, Inc.*, 35 F. Supp. 2d 564 (W.D. Mich. 1999). The alleged harasser, over the course of about seven or eight days, left notes on the plaintiff's desk, called her at home and kissed her, *id.* at 566, and also brushed up against her and put his hand on her knee, *id.* at 596.

The court first found that the conduct fell outside of the harasser's scope of employment and, therefore, the employer could not be held vicariously liable. *Id.* Citing *Trudeau* and *Hartleip*, the court also found that the alleged harasser's conduct did not, as a matter of law, arise to the level of outrageous conduct necessary to support the tort. *Id.*

In a more recent opinion, the Michigan Court of Appeals has held that, in the context of a claim for IIED, the standards for a civilized community may change over time. In *Swain*, the Michigan Court of Appeals found that courts should be "mindful that community standards regarding sexual misconduct have changed significantly over the past few years." 957 N.W.2d at 412; *see Rexhaj v. Sweeping Corp. of America*, 728 F. Supp. 3d 687, 701 (E.D. Mich. 2024) (quoting *Swain*). The plaintiff alleged that after she and the defendant posed for a picture at a restaurant, the defendant squeezed her breast through her clothing. *Swain*, 957 N.W.2d at 401. Plaintiff did not expect to be grabbed, which occurred in a public area. *Id.* The court concluded that "an average member of today's community could find the alleged conduct in this case outrageous." *Id.*

While mindful of the holding in *Swain* that community standards may evolve over time, the court nevertheless finds that the record does not support Plaintiff's claim for intentional infliction of emotional distress. Viewing the evidence in the light most favorable to Plaintiff, Cain subjected Plaintiff to sexual comments during his time acting as Plaintiff's mentor. But following *Trudeau* and *Hartleip*, those comments do not, as a matter of law, show extreme and outrageous conduct in an adult workplace. Plaintiff has not alleged that Cain touched her inappropriately, making *Swain* distinguishable. *See* Phares Dep. at 190-

91 PageID.1289-90. Cain's conduct as Plaintiff's supervisor does not rise to the level of extreme and outrageous conduct.

VI.

The court finds Defendant is entitled to summary judgment and dismissal of Plaintiff's claims. Plaintiff has abandoned any sex discrimination claim independent of a sexual harassment claim. She also abandoned her breach of contract claim. The few instances of sexual comments do not establish a severe or pervasive hostile work environment under federal or state law. And Plaintiff has not established that Defendant can be held liable for these comments made by a coworker. Plaintiff likely established a prima facie case for retaliation under federal law using temporal proximity to establish causation. But she has not pointed to evidence supporting the something more required by Michigan law. For both her federal and state law retaliation claims, Defendant has established a legitimate, nondiscriminatory explanation for the adverse employment actions. The demotion at the end of 2022 and Plaintiff's termination in June 2024 were necessitated by changing business needs. The record shows that other employees contemporaneously suffered similar adverse actions. Finally, the record does not support Plaintiff's claim for intentional infliction of emotional distress.

# ORDER

For the reasons provided in the accompanying Opinion, the court **GRANTS** Defendant Schindler Elevator's motion for summary judgment. ECF No. 35. **IT IS SO ORDERED.**

Date: September 21, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge